UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RAHIM MUHAMMAD,

Petitioner,

v.

FERNANDIES FRAZIER,[1] et al.,

Respondents.

Case No. 3:22-cv-00142-RCJ-CLB

**ORDER**

Petitioner Rahim Muhammad ("Petitioner or Muhammad") filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 12 ("Petition").) This matter is before this Court for adjudication of the merits of the Petition. For the reasons discussed below, this Court denies the Petition and a Certificate of Appealability.

**I.   BACKGROUND**

On July 27, 2015, Reno Police Officers responded to an armed robbery at a CVS store in Reno, Nevada. (ECF No. 45-4 at 9.) A 74-year-old slot attendant reported that the suspect, later identified as Muhammad, had a gun, demanded money, and fled the scene after receiving $499. (*Id.*) Muhammad was charged with robbery upon an older or vulnerable person. (ECF No. 26-61 at 2.) Muhammad pled guilty to robbery in return for the prosecution not seeking habitual criminal status or any enhancement and was sentenced to 5 to 15 years in prison. (ECF No. 27-12.) Muhammad appealed his judgment of conviction but later voluntarily dismissed it. (*See* ECF No. 27-20.) Muhammad then filed a *pro se* post-conviction petition for writ of habeas corpus in state

---

[1] The state corrections department's inmate locator page states that Muhammad is incarcerated at the Stewart Conservation Camp. Fernandies Frazier is the current warden for that facility. At the end of this order, this Court directs the clerk to substitute Fernandies Frazier as a respondent for Respondent Tim Garrett. *See* Fed. R. Civ. P. 25(d).

court and a supplemental counseled petition. (ECF Nos. 27-22, 27-30.) The state district court dismissed the petition as procedurally barred. (ECF No. 27-37.) Muhammad appealed, and the Nevada Supreme Court concluded that the state district court erred in concluding that Muhammad's petition was barred. (ECF No. 28-25.) However, the Nevada Supreme Court found that substantial evidence supported the state district court's finding that Muhammad was not entitled to relief. (*Id.*)

## II.    GOVERNING STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

### III. DISCUSSION

In ground 1, Muhammad alleges that his Fifth and Fourteenth Amendment rights to due process and equal protection were violated. (ECF No. 12 at 3.) And in ground 2, Muhammad alleges that his Sixth Amendment right to the effective assistance of counsel was violated. (*Id.* at 6.) Because the arguments, factual background, and state court determinations of grounds 1 and 2 overlap, this Court discusses grounds 1 and 2 together.

Muhammad alleges the following: (1) he provided his initial counsel (hereinafter "arraignment counsel") with several mitigating letters prior to sentencing, (2) his arraignment counsel failed to transmit the letters to the state district court or to Muhammad's subsequent

3

counsel (hereinafter "sentencing counsel"), (3) he notified his sentencing counsel about the mitigating letters, but his sentencing counsel failed to investigate the issue of the missing mitigation letters prior to or during the sentencing hearing, (4) his sentence was unfair due to the lack of mitigating letters, (5) the mitigating "letters would have attested to [his] positive contributions to the community, mentorship with at-risk youth, employment, and academic participation in several colleges," (6) his pre-sentence investigation report (hereinafter "PSI") erroneously stated that the weapon he used was a handgun when it was actually a toy gun, (7) his sentencing counsel failed to review the PSI to catch this weapon mistake, (8) his sentencing counsel failed to correct the PSI at the sentencing hearing, (9) this error in the PSI decreases his chances of parole eligibility and affects his prison custody classification, (10) he substantially assisted the Reno Police Department with the conviction of several other offenders, (11) his cooperation with law enforcement has been disclosed by certain inmates to other inmates, (12) his sentencing counsel was "ineffective when presenting the gravity and danger of [Muhammad's] cooperation with law enforcement" by not explaining to the state district court that this cooperation would subject him to a high risk of danger in prison, and (13) the state district court exceeded the recommended sentence of the Department of Parole and Probation. (ECF No. 12 at 3–4, 6.)

### A.   State court determination

In affirming the denial of Muhammad's post-conviction petition, the Nevada Supreme Court held:

> Muhammad was convicted pursuant to a guilty plea. In his petition for postconviction habeas relief, Muhammad alleged that counsel provided ineffective assistance during the sentencing hearing. Muhammad specifically argued that counsel should have provided letters of community support and evidence showing his college attendance and public service. The district court concluded that the petition was barred under NRS 34.810(1)(a) because Muhammad pleaded guilty and the petition was "not based upon an allegation that the plea was involuntarily or unknowingly entered or that the plea was entered without effective assistance of

4

counsel." In rejecting Muhammad's petition, the district court did not have the benefit of this court's recent decision in *Gonzales v. State,* 137 Nev., Adv. Op. 40, 492 P.3d 556, 562 (2021). In *Gonzales,* we clarified that a petitioner who pleaded guilty may allege that he or she received ineffective assistance of counsel at sentencing because that claim could not have been raised before entering the plea and barring such a claim would "violate the spirit of our habeas statute and the public policy of this state." *Id.* at 562. Accordingly, the district court erred in concluding that NRS 34.810(1)(a) barred Muhammad's petition.

Nevertheless, the district court found that the specific pieces of evidence that Muhammad asserted had not been presented conveyed the same information as the sentencing statement and exhibits that counsel had presented to the sentencing court. Substantial evidence supports this finding, which is not clearly wrong. *See Lader v. Warden,* 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005) (deferring to the district court's factual findings that are supported by substantial evidence and not clearly wrong, but reviewing its application of the law to those facts de novo). In each of Muhammad's claims, he alleges that the omission of the additional evidence prejudiced him. As that mitigation evidence was cumulative, however, Muhammad has not shown that its presentation would have led to a reasonable probability of a different outcome and thus has not shown prejudice. *Strickland v. Washington,* 466 U.S. 668, 687-88, 696-97 (1984) (stating showings required for ineffective assistance of counsel and for its prejudice component and providing that the claim fails if both components are not shown); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Therefore, the district court reached the correct outcome in denying Muhammad's petition without an evidentiary hearing. *See Nika v. State,* 124 Nev. 1272, 1300-01, 198 P.3d 839, 858 (2008) (providing that an evidentiary hearing is not warranted where a postconviction habeas petition's factual allegations are "belied or repelled by the record"); *Wyatt v. State,* 86 Nev. 294, 298, 468 P.2d 338, 340 (1970) ("If a judgment or order of a trial court reaches the right result, although it is based on an incorrect ground, the judgment or order will be affirmed on appeal.").

(ECF No. 28-25 at 2–4.)

**B.     Background**

Muhammad's sentencing hearing was held on July 2, 2019. (ECF No. 27-11.) At the beginning of the hearing, the state district court asked Muhammad and Muhammad's sentencing counsel if they had "any changes, additions or corrections" to make to the PSI. (*Id.* at 4.) Muhammad's sentencing counsel responded that he had provided a copy of the PSI to Muhammad and that the credit for time served needed to be corrected. (*Id.*) The state district court then noted

that "[t]here was a document in this case filed . . . entitled Statement Regarding Sentencing, and there [were] eight exhibits attached." (*Id.* at 5.) The state district court noted that it reviewed "every one of those documents" as well as the documents previously filed and various letters Muhammad had personally submitted. (*Id.* at 5–6.)

Muhammad's sentencing counsel then made his argument, which included, *inter alia*, the following points: (1) Muhammad used a toy gun in the robbery, (2) Muhammad had accepted responsibility for the robbery, (3) Muhammad fled the United States for Venezuela after his arrest to ensure that his newborn daughter, who was born in Venezuela, could claim American citizenship and then turned himself into law enforcement upon his return to the United States, (4) while out of custody, Muhammad was taking classes to obtain his bachelor's degree and "was involved in activism with voter registration drives and things of that nature," (5) while in custody, Muhammad attended classes at the jail and successfully applied to the Salvation Army program, (6) Muhammad had a rough childhood and had addiction issues, (7) Muhammad worked with Detective Chalmers of the Reno Police Department and "helped identify . . . the perpetrator of [a] Reno cold case homicide" before the instant robbery took place, (8) Muhammad's previous convictions were relatively old, and (9) Muhammad's assistance to Detective Chalmers could have "life threatening repercussions" for Muhammad in prison because he would be "labeled a snitch." (*Id.* at 6–17.)

The prosecution sought the maximum sentence of 6 to 15 years because (1) the victim did not know that the gun was a toy, (2) the prosecution already took into account Muhammad's prior assistance to Detective Chalmers by removing the habitual criminal status, (3) Muhammad fled the United States without permission, and (4) Muhammad had a history of violent offenses. (*Id.* at 18–25.)

Noting that Muhammad's criminal history did not bode well for him being a parent to his four children, the state district court sentenced Muhammad to 5 to 15 years. (*Id.* at 33.)

As the state district court noted, a few days before the sentencing hearing, on June 28, 2019, Muhammad's sentencing counsel filed a sentencing memorandum with attachments. (ECF No. 27-10). Those attachments included Muhammad's daughter's birth documents; documents verifying Muhammad's attendance at San Francisco City College; an employment verification letter; pictures of Muhammad being an activist for voter registration; a character letter from Bale Belokozovski, someone Muhammad knew from Venezuela; a character letter from Zarinah Francois, Muhammad's brother; a character letter from Patricia Jones, an office assistant; a character letter from Damany Fisher, the Dean of Research and Planning at Solano Community College; certificates of completion for a substance abuse program, peaceful family parenting program, and an anger management program; an acceptance letter for the Salvation Army program; a substance abuse evaluation; a psychiatric evaluation; and a letter from Detective Chalmers. (ECF Nos. 27-10 at 7–34; 45-1; 45-2; 45-3.)

In addition to these exhibits attached to the sentencing memorandum, Muhammad argues that his sentencing counsel should have included character letters from Deon Price, a youth life skills coach who worked with Muhammad as a youth advocate in Northern California; Karen McCord, PsyD, Muhammad's former professor at Solano Community College; Jowel C. Laguerre, Ph.D., a chancellor at the Peralta Community College District; Dr. Erin Vines, Muhammad's mentor at Solano Community College; and Thomas Trujillo, Jr., Muhammad's mentor through the UMOJA Program and African-American Scholars at Solano Community College. (ECF No. 27-22 at 24–28.) Muhammad provided these character letters to his arraignment counsel, but they

were never submitted to the state district court by either his arraignment or sentencing counsel. (*See id.* at 23.)

## C. Ground 1—deprivation of a fair and impartial sentencing

Muhammad argues that he was deprived of a fair and impartial sentencing because the state district court was not able to consider all his mitigating evidence. (ECF No. 12 at 3.)

It is "necessary that a sentencing judge not be denied an opportunity to obtain pertinent information," rather, it is highly relevant that a sentencing judge possess "the fullest information possible concerning the defendant's life and characteristics" in order to fashion an appropriate sentence. *Williams v. New York*, 337 U.S. 241, 247 (1949); *see also Williams v. Oklahoma*, 358 U.S. 576, 585 (1959) ("In discharging his duty of imposing a proper sentence, the sentencing judge is authorized, if not required, to consider all of the mitigating and aggravating circumstances involved in the crime."); *Gregg v. Georgia*, 428 U.S. 153, 204 (1976) (affirming that it is "desirable for the jury to have as much information before it as possible when it makes the sentencing decision"); *Nichols v. United States*, 511 U.S. 738, 747 (1994) ("As a general proposition, a sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'").

Although the Supreme Court has emphasized the importance of allowing the sentencing judge to have full and complete information about a defendant, there is no allegation that the state district court here was denied or disallowed from considering the missing mitigating evidence. Rather, as Muhammad alleges in ground 2, his sentencing counsel failed to present it to the state district court. Additionally, as the Nevada Supreme Court reasonably determined and as is further discussed in ground 2, the missing mitigation evidence was cumulative of the other mitigation evidence provided. As such, since there was no error on the part of the state district court to

consider the missing mitigation evidence and the missing mitigation evidence was cumulative, Muhammad fails to demonstrate that his sentencing proceeding was so fundamentally unfair as to violate due process. *See Estelle v. McGuire*, 502 U.S. 62, 70 (1991); *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991) ("The issue for us, always, is whether the state proceedings satisfied due process."); *see also Dowling v. United States*, 493 U.S. 342, 352 (1990) (explaining that the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly").

Consequently, based on the record, the Nevada Supreme Court's denial of this ground constituted an objectively reasonable application of federal law and was not based on an unreasonable determination of the facts. Muhammad is not entitled to federal habeas relief for ground 1.

**D.     Ground 2—counsel's failure to investigate and present mitigating evidence**

Muhammad argues that his counsel was ineffective regarding his representation of Muhammad at his sentencing hearing. (ECF No. 12 at 6.)

**1.     Standard of ineffective assistance of counsel claims**

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show

"that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05. In *Richter*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 2. Analysis

Muhammad challenges his sentencing counsel's following actions: (1) his failure to effectively present the gravity and danger he faced in prison due to his substantial assistance to the Reno Police Department in another case, (2) his failure to correct his PSI to accurately reflect that he only used a toy gun during the robbery, and (3) his failure to investigate the missing mitigation letters that Muhammad had given to his arraignment counsel. (ECF No. 12 at 3–4, 6.)

First, regarding his counsel's actions regarding his substantial assistance to the Reno Police Department, Muhammad's sentencing counsel argued that his assistance to the Reno Police Department "could have long-term, perhaps even life threatening repercussions" for Muhammad in prison "if the extent of his involvement in that case became widely publicly known." (ECF No. 27-11 at 15.) Muhammad's sentencing counsel also argued: "quite frankly when you are telling on somebody who committed murder, you know that you're, in fact, putting your own self in jeopardy." (*Id.*) Based on these arguments enunciating the risks that Muhammad faced in prison due to his previous assistance, Muhammad fails to demonstrate that his sentencing counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In fact, Muhammad fails to articulate what further arguments his sentencing counsel should have made in this regard. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Second, regarding his counsel's actions as to the PSI, the state district court asked both Muhammad and his sentencing counsel about any corrections that needed to be made to the PSI. (ECF No. 27-11 at 4.) Although Muhammad had seen a copy of his PSI prior to sentencing, he did not notify the state district court that any changes were needed. (*Id.*) Moreover, the only references in the PSI to Muhammad having used an actual gun during the robbery rather than a toy gun appears in (1) Muhammad's criminal record which provides that he was arrested for the instant offense of robbery with a deadly weapon, and (2) the offense synopsis which provides that "Reno Police Officers responded to an armed robbery" and the victim told them that Muhammad "produced a handgun wrapped in black tape." (ECF No. 45-4 at 9.) Because (1) Muhammad was originally charged with robbery with a deadly weapon (ECF No. 26-3) and (2) the victim did not know that Muhammad had used a toy gun at the time she was speaking with law enforcement,

Muhammad fails to demonstrate that either of these references in the PSI warranted correcting. Thus, Muhammad fails to demonstrate that his sentencing counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

Third, regarding the missing mitigation evidence, according to Muhammad, he told his sentencing counsel that he had previously given his arraignment counsel the additional mitigation letters, but his sentencing counsel failed to investigate where the missing letters had gone. Notably, however, Muhammad was able to easily receive the missing letters after his sentencing hearing by simply sending a request to his arraignment counsel's office.

When challenging counsel's actions in failing to present mitigating evidence during a sentencing hearing, the "principal concern . . . is not whether counsel should have presented a mitigation case[, but instead] . . . whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable*." *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003) (emphasis in original). Because Muhammad was able to obtain the missing mitigation letters by sending a simple inquiry to his arraignment counsel's office following his sentencing hearing, it appears that it may have been unreasonable for his sentencing counsel to not have investigated the missing letters. However, importantly, it appears that Muhammad's sentencing counsel may have only been put on notice of the missing letters via an email from Patricia Jones that was sent to him on July 1, 2019, the day prior to Muhammad's sentencing hearing. (ECF No. 27-22 at 30.) Because (1) it is not clear that Muhammad's counsel was timely put on notice of the missing letters via an email from a third party and (2) Muhammad's statement that he told his sentencing counsel about the missing letters is self-serving, it is not clear whether Muhammad's sentencing counsel's actions regarding the missing mitigation letters fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *see also Babbitt v. Calderon*, 151 F.3d

1170, 1174 (9th Cir. 1998) ("[C]ounsel is not deficient for failing to find mitigating evidence if, after a reasonable investigation, nothing has put the counsel on notice of the existence of that evidence.").

Nonetheless, the Nevada Supreme Court reasonably determined that Muhammad fails to demonstrate prejudice regarding the missing mitigation letters. As the Nevada Supreme Court reasonably concluded, these missing mitigation letters were cumulative of other mitigation evidence. Indeed, the mitigation letters that Muhammad's sentencing counsel provided to the state district court from Belokozovski, Francois, Jones, and Fisher provided that (1) Muhammad was a caring father and a good friend and had potential to teach and mentor others, (2) Muhammad worked hard, had made progress from the time of his arrest to the time of his sentencing, and provided financial assistance to his children; (3) Muhammad had been "clean" for all his prior court appearances and was hard working; and (4) Muhammad was a dedicated student and served as a role model for other students. (ECF No. 27-10 at 23–26.) Comparatively, the missing mitigation letters from Price, McCord, Laguerre, Vines, and Trujillo provided: (1) Muhammad was a valuable mentor and youth advocate; (2) Muhammad was active in many activities while going to college, (3) Muhammad was on a positive track, (4) Muhammad had made positive changes in his life and wanted to be a productive citizen, and (5) Muhammad had good moral character and was remorseful for his actions. (ECF No. 27-22 at 24–28.)

Due to the similar sentiments provided in the letters given to the state district court as compared to the missing letters, Muhammad fails to demonstrate a reasonable probability that, but for his counsel's potential failures in providing the missing letters, the result of his sentencing proceeding would have been different. *Strickland*, 466 U.S. at 694; *see also Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation.");

*Cunningham v. Wong*, 704 F.3d 1143 (9th Cir. 2013) (failing to call additional mitigating witnesses was not prejudicial since their testimony would have been cumulative of other testimony). Indeed, it appears that the state district court sentenced Muhammad harshly due to his extensive criminal history, which would not likely have been negated by five additional character letters. (ECF No. 27-11 at 33.)

Therefore, the Nevada Supreme Court's determination that Muhammad failed to demonstrate prejudice constitutes an objectively reasonable application of *Strickland*'s prejudice prong and was not based on an unreasonable determination of the facts. Muhammad is not entitled to federal habeas relief for ground 2.

## IV.    MOTIONS TO STRIKE

Respondents move to strike the exhibits included with Muhammad's reply brief and certain arguments contained within the reply brief. (ECF No. 39.) Respondents also move to strike Muhammad's addendum. (ECF No. 46.) Respondents' motions are based on Muhammad attaching new exhibits and making new arguments following the completion of briefing of his petition. (ECF Nos. 39, 46.)

It appears that Muhammad included an additional argument in his reply that was not contained in his Petition: a forensic report was withheld during discovery. (ECF No. 38 at 2.) This Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Because Muhammad did not include this discovery withholding claim in his Petition, this Court does not consider it. However, this Court finds no need to strike the entirety of the reply brief.

Regarding new exhibits, Muhammad's reply brief contains a letter he filed with the state district court on February 3, 2022, and two attachments to that letter: forensic reports that were

allegedly withheld by the prosecution. (ECF No. 38 at 5–13.) And Muhammad's addendum provides a state district court order dated August 30, 2022, denying Muhammad's motion for the appointment of counsel and motion to reduce his sentence. (ECF No. 41 at 2–8.) This Court is limited on habeas review "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Because these exhibits—dated February 3, 2022, and August 30, 2022—were not in the record at the time the Nevada Supreme Court affirmed the denial of Muhammad's post-conviction petition on December 17, 2021 (ECF No. 28-25), this Court is restricted from considering them. However, again, this Court finds no need to strike the entirety of the reply brief or the addendum.

## V.     MOTION TO SEAL

Respondents have moved for leave to file four exhibits under seal: Muhammad's substance abuse evaluation, Muhammad's psychiatric evaluation, a letter from Detective Chalmers, and Muhammad's PSI. (ECF No. 44.) Having reviewed and considered the matter in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, this Court finds that a compelling need to protect Muhammad's safety, privacy, and/or personal identifying information outweighs the public interest in open access to court records. Accordingly, this Court grants Respondents' motion.

## VI.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to Muhammad. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). This Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the

denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

### VII. CONCLUSION

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus under 28 U.S.C. § 2254 **[ECF No. 12] is denied**.

IT IS FURTHER ORDERED that Respondents' motion to file documents under seal **[ECF No. 44] is granted**.

IT IS FURTHER ORDERED that Respondents' motions to strike **[ECF Nos. 39 and 46] are denied**.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that the Clerk of Court is directed to substitute Fernandies Frazier for Respondent Tim Garrett, enter judgment accordingly, and close this case.

Dated: November 2, 2022.

ROBERT C. JONES
UNITED STATES DISTRICT COURT